**MORGAN MELHUISH ABRUTYN**
Shaji M. Eapen, Esq. –N.J. Bar I.D. #022602001
651 W. Mt. Pleasant Avenue
Suite 200
Livingston, N.J. 07039
Tel:    (973) 994-2500
Fax:    (973) 994-3375
Attorneys for Plaintiff Hudson Insurance Company
Our File No.:  HUD 33-639 U EA/SME

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUDSON INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>-vs-<br><br>GREENWICH INSURANCE COMPANY; INDIAN HARBOR INSURANCE COMPANY; CONSULTING & TESTING SERVICES, INC.; NEW YORK UNIVERSITY; and ABC INSURANCE COMPANIES.<br><br>                    Defendants. | Civil Action No.:<br><br>**E-FILED**<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Hudson Insurance Company (hereinafter "Hudson"), a Delaware

Corporation with a principal place of business at 100 William Street, New York, New

York, by way of Complaint for Declaratory Judgment against the Defendants herein,

says:

{**00975744**}

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to Section 1332 of Title 28 of the United States Code.

2.      Venue in this matter is properly before the Court by virtue of Title 28, Section 1391 of the United States Code.

## INTRODUCTION

3.      This is a Complaint pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-52, *et seq.*, to obtain a judicial declaration of Hudson's rights and responsibilities under various insurance policies issued to Consulting & Testing Services, Inc. (hereinafter "CTSI") as respects share of defense costs and fees and any potential indemnification for any claims asserted in various Complaints filed against New York University arising out of alleged injuries from the post September 11, 2001 cleanup.

4.      Defendant New York University (herein after "NYU) is a public educational institution located at 70 Washington Square South, New York, New York 10012.

5.      Defendant Consulting & Testing Services, Inc. ("CTSI"), a New Jersey Corporation having a place of business at 622 Georges Road, New Brunswick, New Jersey, is in the business of providing testing and remediation services.

6.      Hudson issued Policy No. FEC6103306 to CTSI in New Jersey with a policy period of August 14, 2005 to August 14, 2006. ("Hudson's 2005 Primary Policy").

7.      Hudson issued an Excess Policy No. FXX6103307 to CTSI in New Jersey with a policy period of August 14, 2005 to August 14, 2006. ("Hudson's 2005 Excess Policy").

8.      Hudson issued Policy No. FEC6108497 to CTSI in New Jersey with a policy period of August 14, 2006 to August 14, 2007.  ("Hudson's 2006 Primary Policy").

9.      Hudson issued Excess Policy No. FSC6108498  to CTSI in New Jersey with a policy period of August 14, 2006 to August 14, 2007.  ("Hudson's 2006 Excess Policy").

10.      Hudson issued Policy No. FEC6114237 to CTSI in New Jersey with a policy period of August 14, 2007 to August 14, 2008.  ("Hudson's 2007 Primary Policy").  (Hudson's 2005 Primary Policy, Hudson's 2006 Primary Policy and Hudson's 2007 Primary Policy are collectively referred to as "Hudson's Primary Policies").

11.      Hudson issued Excess Policy No. FSX6114238 to CTSI in New Jersey with a policy period of August 14, 2007 to August 14, 2008.  ("Hudson's 2007 Excess Policy").  (Hudson's 2005 Excess Policy, Hudson's 2006 Excess Policy and Hudson's 2007 Excess Policy are collectively referred to as "Hudson's Excess Policies").

(Hudson's Primary Policies and Hudson's Excess Policies are collectively referred to as "Hudson's Policies").

12. Greenwich Insurance Company, a Delaware Corporation with a principal place of business in Stamford, Connecticut, issued an Environmental Liability Policy to a conglomerate of colleges and universities, including NYU with a policy period of July 1, 2000 to July 1, 2003.

13. Indian Harbor Insurance Company, a North Dakota corporation with a principal place of business in Stamford, Connecticut, issued an Environmental Liability Policy to NYU that also contained a policy period of July 1, 2000 to July 1, 2003.

## FACTUAL BACKGROUND

14. After the terrorist attacks on September 11, 2001 destroyed the World Trade Center Towers, many entities and individuals in and around the vicinity of the attacks, including NYU, began the difficult process of cleaning up.

15. On or about September 17, 2001, NYU contracted with CTSI to monitor, inspect and record the clean-up of asbestos-containing material ("ACM") at various sites and the transportation to and depositing of ACM into waste containers provided by NYU.

16. NYU's contract with CTSI required CTSI to name NYU as an additional insured under its policy of insurance.

17.     CTSI was one of a number of contractors retained by NYU to assist with the clean-up post September 11, 2001 ("9/11").   In addition, various sub-contractors performed clean-up services at various NYU sites.   Upon information and belief, all of these contractors and sub-contractors were required to name NYU as an additional insured under their respective insurance policies.

18.     Post 9/11, a number of individuals began filing Complaints in the United States District Court for the Southern District of New York seeking damages because of personal injuries allegedly related to the post 9/11 cleanup at NYU. (The "9/11 Cleanup Injury Lawsuits").

19.     NYU tendered the defense and indemnification of those lawsuits to various insurers including Hudson.

20.     By letter dated February 10, 2012, Hudson issued a Partial Denial and Reservation of Rights letter to NYU's counsel. That correspondence advised that subject to New Jersey law, Hudson would participate in the defense of NYU as an additional insured under the Hudson Primary Policies issued to CTSI  as respects the allegations of violations of Labor Law 241(6) asserted in the 9/11 Cleanup Injury Lawsuits. However, that correspondence went on to disclaim any defense and or indemnity obligations under the Commercial General Liability Coverage portion in Hudson's Primary Policies for the balance of the claims alleged in the 9/11 Cleanup Injury Lawsuits.

21.     The February 10, 2012 letter reserved Hudson's rights and interests under Hudson's Policies and the law.  The letter properly advised that since the Complaints contained covered and non-covered claims and since any obligation by Hudson to defend and/or indemnify NYU for violations of Labor Law 241(6) would be subject to possible sharing with other insurers that also issued policies wherein NYU was named an insured or additional insured, under New Jersey law and Hudson's Policies language, Hudson's duty to defend was converted to a duty to reimburse its percentage share of NYU's reasonable defense fees and costs relating to those potentially covered Labor Law 241 (6) claims within those covered Plaintiffs' Complaints.

22.     The February 10, 2012 letter also advised that Hudson would not reimburse NYU for any fees and costs incurred prior to NYU's tenders for each Plaintiffs' Complaint in the 9/11 Cleanup Injury Lawsuits, and that Hudson would not reimburse NYU for any fees and costs incurred prior to NYU providing the requested documentation to prove that it qualifies as an additional insured under Hudson's Policies.

23.     Upon Information and belief, the defendants, Greenwich Insurance Co., and Indian Harbor Insurance Company, each also agreed to participate in the defense of NYU in connection with the claims asserted in the 9/11 Cleanup Injury Lawsuits, subject to their own asserted limitations and reservations.

## THE HUDSON PRIMARY POLICIES

24.     The Hudson Primary Policies each provide general liability insurance on form CG 00 01 (12/04). The Policy Insurance Agreement provides part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage' to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

            **(1)**    The amount we will pay for damage is limited as described in Section **III -** Limits of Insurance and

            **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an " occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

(3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of any "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury"  or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

25.  The policies each contain the following relevant definitions:

3.  "Bodily Injury" means "bodily injury sickness or disease sustained by a person, including death resulting from any of these at any time."

***

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

26.  The following exclusion is included in each policy:

**Exclusion Of Certified Acts of Terrorism**

A.  The following exclusion is added:

This Insurance does not apply to:

**TERRORISM**

Any injury or damage arising, directly or indirectly, out of a "certified act of terrorism."

B. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Federal Terrorism Risk Insurance Act of 2002. ...

27.   The following exclusion is included in each policy:

f.      Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

***

(e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way, respond to, or assess the effects of, "pollutants".

2)    Any loss cost or expense arising out of any:

a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat,

detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b)      Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

28.   The following exclusion is included in each policy:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILIITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A– BODLILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages)

***

This insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of the rendering of or failure to render any professional services by you or performing work on your behalf in such capacity.

Professional services include:

1.      The preparing, approving or failing to prepare or approve, maps, drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.      Supervisory,      inspection,      architectural      or
engineering activities.

29.     The following additional insured endorsement is included in each

policy:

This endorsement modifies insurance provided under the
following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONTRACTORS POLLUTION LIABILIY COVERAGE PART

SCHEDULE

Name of Person or Organization:

Any person(s) or organization(s) whom the Named
Insured agrees, in a written contract, to name as an
additional insured.  However, this status exists only for
the project specified in that contract.

The person or organization shown in this Schedule is
included as an insured, but only with respect to that
person's or organization's vicarious liability arising out of
your ongoing operations performed for that insured.

30.     Each policy contains the following pertinent other insurance cause:

4. Other Insurance

If other valid and collectible insurance is available to the
insured for a loss we cover under Coverages A or B of this
Coverage Part, our obligations are limited as follows:

a.      Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.

b.      Excess Insurance

This insurance is excess over:

1.      Any of the other insurance, whether primary, excess contingent or on any other basis:

(a)     That is Fire, Extended coverage Builder's Risk, Installation Risk or similar coverage for "your work";

. . .

2.      Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit'.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.   Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## COUNT I

31.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

32.    The Plaintiff and defendants Greenwich Insurance Company, and Indian Harbor Insurance Company have previously entered into a cost sharing agreement with regard to the defense afforded to NYU in connection with the 9/11 Cleanup Injury Lawsuits.   In that agreement, each party reserved their rights to

demand a judicial adjudication of the rights and responsibilities of each insurer as respects any defense or indemnity obligation owed to the Defendant NYU.

33.    At the inception of the first Hudson policy on August 14, 2005, an insured knew that the bodily injury or property damage had occurred, in whole or in part.

34.    As the bodily injury and/or property damage was known to an insured prior to the inception of the first Hudson policy, there can be no insurance coverage under that policy and each subsequent insurance policy because of the limitations set forth in the policy insurance agreement regarding known injury and loss.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.    Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.    Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## COUNT II

35.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

36.     At the inception of the Second Hudson policy on August 14, 2006, an insured knew that the bodily injury or property damage had occurred, in whole or in part.

37.     As the bodily injury and/or property damage was known to an insured prior to the inception of the Second Hudson policy, there can be no insurance coverage under that policy and each subsequent insurance policy because of the limitations set forth in the policy insurance agreement regarding known injury and loss.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.     Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.     Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## COUNT III

38.     The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

39.     At the inception of the Third Hudson policy on August 14, 2007, an insured knew that the bodily injury or property damage had occurred, in whole or in part.

40.     As the bodily injury and/or property damage was known to an insured prior to the inception of the Third Hudson policy, there can be no insurance coverage under that policy and each subsequent insurance policy because of the limitations set forth in the policy insurance agreement regarding known injury and loss.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.     Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.     Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## COUNT IV

41.     The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

42.     Each Hudson Policy contains an exclusion for injury and damage arising from Pollution as that term is defined in the policy.

43.      Upon information and belief, the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits assert claims for injury and damage arising from pollution.

44.    The pollution exclusion contained in the Hudson Primary Policies is directly applicable to negate any insurance coverage for pollution related claims

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.    Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.    Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## COUNT V

45.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

46.    Each Hudson Policy contains an exclusion for injury and damage arising from terrorism as that term is defined in the policy.

47.     Upon information and belief, the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits assert claims for injury and damage arising from terrorism.

48.    The terrorism exclusion contained in the Hudson Primary Policies is directly applicable to negate any insurance coverage for terrorism related claims.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

{00975744}

a.     Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.     Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

**COUNT VI**

49.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

50.    Each Hudson Policy contains an exclusion for injury and damage arising from the rendering of or failure to render professional services.

51.    Upon information and belief, the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits assert claims for injury and damage arising from the rendering of or failure to render professional services.

52.    The Professional Liability exclusion contained in the Hudson Primary Policies is directly applicable to negate any insurance coverage for injury claims arising from the rendering or failure to render professional services.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.     Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b.      Attorney's fees, costs and such other, different and further relief as the

Court may deem just and proper.

## COUNT VII

53.     The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

54.     Each Hudson Policy at issue contains an additional insured endorsement.

55.     NYU's status as an additional Insured arises solely from that endorsement.

56.     Pursuant to the additional insured endorsement, the scope of coverage for an additional insured is limited to the additional insured's vicarious liability for damages arising from the named insured's ongoing operations for that additional insured.

57.     Upon information and belief, save for the claims of liability under NY Labor Law 241(6), the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits seek damages for NYU's direct liability, and do not seek damages against NYU for its vicarious liability for damages arising from CTSI's ongoing operations.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.  Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU for any claims asserted against it in the 9/11 Cleanup Injury Lawsuits except for the claims seeking damages for violation of NY Labor Law 241(6); and

b.  Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## COUNT VIII

58.  The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

59.  Each Hudson Policy at issue contains an Other Insurance Clause which outlines Hudson's responsibility as respects defense and indemnification where other insurance coverage for the same loss is present.

60.  The Hudson Insurance Company policies were each issued in New Jersey to a New Jersey insured and are governed by New Jersey law.

61.  Upon information and belief, the policies issued to NYU by both Greenwich Insurance Company, and Indian Harbor Insurance Company each contain an Other Insurance Clause which outlines each insurer's respective responsibility for the defense and indemnification of its insured where other insurance coverage for the same loss is present.

62.    The Greenwich Insurance Company, and Indian Harbor Insurance Company policies were each issued in New York to a New York insured and are governed by New York Law.

63.    Upon information and belief, both Greenwich Insurance Company, and Indian Harbor Insurance Company afforded insurance coverage to NYU in connection with the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits.

64.    The rights and responsibilities of Hudson Insurance Company, Greenwich Insurance Company, and Indian Harbor Insurance Company regarding their respective allocation of the defense and indemnity obligations (if any) owed to NYU in the 9/11 Cleanup Injury Lawsuits, is in dispute.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating each insurer's allocation of responsibility (if any) as respects the defense and indemnification of NYU for the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits; and attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## **COUNT IX**

65.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

66.     The Plaintiff and defendants Greenwich Insurance Company, and Indian Harbor Insurance Company have previously entered into a cost sharing agreement with regard to the defense afforded to NYU in connection with the 9/11 Cleanup Injury Lawsuits. In that agreement, each party reserved their rights to demand a judicial adjudication of the rights and responsibilities of each insurer as respects any defense or indemnity obligation owed to the Defendant NYU.

67.     Pursuant to the cost sharing agreement, the Plaintiff has expended substantial sums in the defense of the defendant NYU in connection with the 9/11 Cleanup Injury Lawsuits.

68.     The costs expended by the Plaintiff in defense of NYU in connection with the 9/11 Cleanup Injury Lawsuits, are costs that were properly to be paid by the defendants Greenwich Insurance Company and Indian Harbor Insurance Company.

69.     As a result of the Plaintiff's payments of defense costs and expenses, the defendants Greenwich Insurance Company and Indian Harbor Insurance Company have been unjustly enriched and must reimburse Hudson for these defenses costs and fees.

**WHEREFORE**, Hudson seeks a judgment for compensatory damages, fees, costs of suit, and any other relief that the Court deems just and proper.

## COUNT X

70.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

71.    The Defendant Greenwich Insurance Company issued its policy of Insurance No. PEC0002507 for the policy period of  July 1, 2000 through July 1, 2003 to NYU as the named Insured.

72.    The Defendant Indian Harbor Insurance Company issued its policy of insurance No. PEC0002509 for the policy period of July 1, 2000 through July 1, 2003 to NYU as the named Insured.

73.    Upon information and belief, both Greenwich Insurance Company, and Indian Harbor Insurance Company afford insurance coverage to NYU in connection with the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits.

74.    The Defendants ABC Insurance Companies 1-10 issued their respective policies of insurance which provide coverage to the Defendant NYU either as a named insured, or additional insured.

75.    Upon information and belief, the policies issued by the defendants ABC Insurance Companies 1-10, afford insurance coverage to NYU in connection with the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating the rights and responsibilities of each insurer defendant under their respective policies of insurance for the defense and indemnification of the defendant NYU in connection with the  9/11 Cleanup Injury Lawsuits along with attorney's fees, costs, expenses, and any other relief the Court deems just and proper.

### COUNT XI

76.    The Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth at length herein.

77.    The defendants CTSI and NYU are joined herein as nominal defendants in order that they be bound by the Judgment of this Court as they have an interest in the presence or absence of insurance coverage and/or allocation of any defense and indemnity obligations owed.

**WHEREFORE**, Hudson seeks a judgment ordering, declaring and adjudicating that:

a.    Hudson is not obligated to defend or indemnify NYU, or to pay any judgment against NYU in the 9/11 Cleanup Injury Lawsuits; and

b    A judgment ordering, declaring and adjudicating each insurer's responsibility and allocation of contribution (if any) toward the defense and indemnification of NYU for the claims asserted against NYU in the 9/11 Cleanup Injury Lawsuits; and

     c.     Attorney's fees, costs and such other, different and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

**PLEASE TAKE NOTICE**, that pursuant to Fed. R. Civ. P. 38(b) and L. Civ. R. 38-1, Hudson demands a trial of all issues by a jury.

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Elliott Abrutyn, Esq. is hereby designated as trial counsel.

## CERTIFICATION

Pursuant to L. Civ. R. 11.2, I hereby certify that the within action is not the subject of any other action pending in any Court, or of any pending arbitration or administrative proceeding.

                        **MORGAN MELHUISH ABRUTYN**
                        Attorneys for Plaintiff Hudson
                        Insurance Company


                        /s/ Shaji M. Eapen
                        SHAJI M. EAPEN, ESQ.

Dated:   November 24, 2014